
RECEIVED
FEB 0 7 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| CYNTHIA LEBLANC<br>obo Patrick LeBlanc | CIVIL ACTION NO. 05-0628 |
| VS. | JUDGE DOHERTY |
| JO ANNE BARNHART, Commissioner<br>Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the undersigned concludes that there is substantial evidence to support the ALJ's finding. Accordingly, it is recommended that the Commissioner's decision be **AFFIRMED**.

### *Background*

On November 29, 1999, the Commissioner granted the application for SSI benefits filed by Cynthia LeBlanc ("LeBlanc") on behalf of her child, Patrick LeBlanc ("Patrick").[1] The Appeals Counsel determined that Patrick, who was born on January 18, 1995, was disabled as of March 1, 1995 due to asthma which met the requirements of Title 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P, § 103.03C2. LeBlanc's case was reviewed in 2003 and the SSA concluded that Patrick was no longer disabled and terminated benefits.[2] LeBlanc requested an administrative hearing, and on December 6, 2004, the ALJ issued a decision finding that Patrick

---

[1] Tr. 193.

[2] Tr. 239.

was not disabled.[3] LeBlanc appealed the decision to the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner from which LeBlanc now appeals.

### *Standard of Review*

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Id.

### *Childhood Disability Benefits*

An individual under age 18 may be found disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i).

---

[3]Tr. 20-28.

The regulations provide a three-step sequential evaluation process for determining whether a child's impairments result in "marked and severe limitations." First, if the child is engaging in "substantial gainful activity," the child will be found not disabled regardless of medical condition or age, education, or work experience. 20 C.F.R. §416.924(b). Second, the child must have a severe impairment or impairments. If the child suffers from a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will be considered to have no severe impairment, and therefore to be not disabled. Title 20 C.F.R. §416.924(c). Third, the child will be considered disabled if his or her impairment(s) meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1 of Subpart P of Part 404 of the chapter. If a child's impairments do not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are disabling. 20 C.F.R. §§ 416.926a (functional equivalence for children). *See, e.g.*, Luckerson v. Apfel, 2000 WL 1222125 (N.D. Ill. Aug. 22, 2000).

### *ALJ's Findings*

The ALJ found that Patrick's asthma was a severe impairment.[4] The ALJ concluded, however, that Patrick had medically improved and no longer met or functionally equaled any impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P.

### *Assignment of Errors*

LeBlanc argues that the ALJ erred in finding that Patrick had medically improved and that he no longer met the requirements of a Listed impairment.

---

[4] Tr. 22.

## *Findings and Conclusion*

### *I. Administrative Record*

In March, 1995, Patrick was hospitalized for five days due to respiratory distress.[5] He was hospitalized again in April, 1995 for pneumonia and asthma.[6] On September 24, 1995, Patrick's treating physician, Dr. Jibran Antwi, who specializes in pediatric allergies, stated:

> Since my report dated 6/19/95, I have seen Patrick four more times for asthmatic exacerbation.... This child's asthma could be treated on outpatient basis and needed two course of oral steroids for six days each. The last time I saw this child was on 08/16/95 and at that time, he had an asthma exacerbation and possible pneumonia and I started him on Biaxin for ten day course. Also, the child is maintained on nebulizer treatment with Albuterol four times daily and Vanceril, 2 puffs three times daily with aerochamber.
>
> This child does have frequent asthma attacks and frequent need for steroids and he did not have any break from his asthma this past summer. Although this child's asthma is moderate to severe at this age, his growth and development are normal and the long term prognosis is good. However, he may have frequent attacks for the first year or two.[7]

Patrick continued having asthma attacks and in July, 1998 he was diagnosed with resistant asthma.[8]

On November 22, 1999, Patrick was found to be disabled by Disability Determination Services ("DDS"). In 2003, Patrick's case was reviewed to determine whether he continued to be disabled.

---

[5] Tr. 110.

[6] Tr. 107.

[7] Tr. 77.

[8] Tr. 142.

On March 15, 2003, at the request of DDS, Patrick was examined by Dr. Frederick Lee, an internist.[9] Patrick was active and his lungs were clear, with good air movement and no retractions. Dr. Lee concluded that "the asthma seems to be well under control at the present time."

On May 20, 2003, Dr. Antwi noted:

I have been taking care of Patrick since he was a toddler. However, the last time I saw him for asthma or for any other problems was on 6/8/01. At the time he was still having active asthma. He was on Advair, Singulair, and Max-Air with good control of his asthma. I have not seen Patrick for the last 22 months.

In summary, this is a child who has a history of recurrent asthmatic attacks which at times are severe. He was fairly well controlled on medication in 2001.[10]

On July 18, 2003, Dr. Antwi reported as follows:

I reported on Patrick in May stating that I had not seen him. However, I obtained the records from our office in St. Martinville where he was seen once in 3/03. At that time, he came in because of a cough, sore throat and fever. He was found to have Strep Pharyngitis. No significant wheezing was noted at that time. However, the mother was instructed to continue the nebulizer treatment for the cough.

In summary, I do not think that the child's asthma is significant or disruptive at this point. I think his functioning is normal for age, and the prognosis is good.[11]

At the administrative hearing on October 15, 2004, Patrick testified that he was in the fourth grade and he is in gifted education courses.[12] He plays kickball and basketball at recess and little league baseball during the summer.[13] He does not bring medicine to school, nor has he

---

[9] Tr. 311.

[10] Tr. 334.

[11] Tr. 333.

[12] Tr. 363.

[13] Tr. 364, 368.

had an asthma attack there. LeBlanc testified that Patrick had not been hospitalized recently, but that every couple of months he begins coughing, which is indicative of oncoming asthma problems, and she will bring him to the doctor at that point.

## *II. Appendix I Impairment*

The ALJ concluded that Patrick's condition no longer meets the requirements of Title 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P, § 103.03C2. Section 103.03C2. states as follows:

**103.03 Asthma.**

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

\*\*\*

2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period

In November, 1999, Patrick was found to meet the requirements of § 102.03C2 because he had repeated hospitalizations and required steroid treatment due to his asthma. When his case came before the ALJ in 2004, Patrick had not been hospitalized since he was awarded benefits, nor are there medical records indicating that he has persistent low-grade wheezing between acute attacks or that he used corticosteroids more than 5 days per month for at least 3 months. Accordingly, Patrick did not meet the requirements of § 102.02A.

Once it is determined that an impairment does not meet the requirements of a listed impairment, the impairment is evaluated to determine whether it functionally equals an Appendix 1 listing. A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two of the following six domains, or an extreme limitation in one domain:

(i) Acquiring and using information;
(ii) Attending and completing tasks;
(iii) Interacting and relating with others;
(iv) Moving about and manipulating objects;
(v) Caring for yourself; and,
(vi) Health and physical well-being.

Title 20 C.F.R. § 416.926a(b)(1)(i-vi).

A "marked" limitation in a domain means an impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(2)(i).[14] A "marked" limitation is "more than moderate" but "less than extreme." Id. An "extreme" limitation will be found when an impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" within a domain. 20 C.F.R. §416.926a(e)(3).[15] An extreme limitation is "more than marked," but "does not necessarily mean a total lack or loss of ability to function." Id. Day-to-day functioning is considered to be

---

[14] Title 20 C.F.R. §416.926(e)(2)(i) states as follows:
**(2) Marked limitation.**
(i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

[15] Title 20 C.F.R. §416.926(e)(3)(i) states as follows:
**(3) Extreme limitation.**
(i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

seriously limited regardless of whether the impairment limits only one activity within a domain, or several.

The ALJ concluded that Patrick's impairment did not functionally equal a listed impairment. The ALJ found that Patrick has no impairment of function in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself, and less than marked impairment in the moving about and manipulating objects, and a marked impairment in health and physical well being.

The record supports the ALJ's conclusions. Patrick's asthma does not limit his physical activities – he plays sports at recess and during the summer months, and he helps with household chores. Moreover, Patrick is a gifted student. Further, Dr. Antwi explained that Patrick's asthma is no longer significant. Thus, there is substantial evidence indicating that Patrick does not have a marked impairment in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for himself.

Since Patrick's asthma sometimes requires doctors' visits and medication, it impacts his "health and physical well-being." In this domain, the Social Security Services Administration considers:

> [T]he cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) [moving about and manipulating objects] of this section.

20 C.F.R. § 416.926a(l).

Although Patrick has asthma, it appears that, since he is physically active without limitation, he has adjusted well to the limitations posed by his asthma and the required treatment. Accordingly, the undersigned concludes that substantial evidence supports the ALJ's conclusion

that Patrick does not have an extreme impairment in the domain of health and physical well-being.

As discussed above, an impairment functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain. There is no evidence that Patrick has a marked impairment in at least two areas, or an extreme limitation in one. Thus, the ALJ's conclusion that Patrick's impairment does not functionally equal a listed impairment is supported by substantial evidence.[16]

*Conclusion*

For the foregoing reasons, the undersigned concludes that the ALJ's decision is supported by substantial evidence. It is therefore **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P.**

---

[16] LeBlanc argues that the ALJ erred in relying on the report of Dr. Lee because he does not specialize in asthma or pediatrics. This argument is without merit. LeBlanc fails to point to any authority requiring that a consultative examination be performed by a specialist in the field applicable to the claimant's claim. More importantly, LeBlanc fails to demonstrate that she was prejudiced by the ALJ's failure to obtain a consultative examination by a specialist. Dr. Antwi specializes in asthma and pediatrics and he is Patrick's treating physician. As discussed above, Dr. Antwi opined that Patrick's asthma was under control and no longer posed a significant limitation on him. Thus, the record contains the opinion of a specialist and that opinion supports the ALJ's decision.

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on February 7, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140     FAX 593-5155